**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UTICA MUTUAL INSURANCE COMPANY
and REPUBLIC-FRANKLIN INSURANCE
COMPANY,

     Plaintiffs,

     v.

GREEN ORGANICS INC. and MILROY
FARMS, LLC,

     Defendants.

No. 1:26-cv-4748

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs, Utica Mutual Insurance Company and Republic-Franklin Insurance Company (collectively, "Utica Insurers"), through their attorneys, for their Complaint for Declaratory Judgment against Defendants Green Organics, Inc. ("Green Organics") and Milroy Farms, LLC ("Milroy Farms"), states as follows:

**NATURE OF ACTION**

1. This is a third-party insurance coverage action. The Utica Insurers seek a declaratory judgment that, under the commercial general liability coverage parts of certain commercial package policies and commercial umbrella liability policies issued to Green Organics, they owe no duty to defend or indemnify (a) Green Organics and Milroy Farms in connection with the Violation Notice L-2025-00145 and attachments, dated May 30, 2025, issued by the Illinois Environmental Protection Agency ("IEPA") to Milroy Farms (the "IEPA Violation Notice Package"); or (b) Green Organics in connection with the claims asserted against it by Milroy Farms in its December 5, 2025 correspondence (the "Milroy Claim").

1

1097150\328873041.v3

2. The IEPA Violation Notice Package alleges, among other things, open dumping of compost material and other waste and failure to properly initiate and complete closure of a permitted composting facility at 1270 East Beecher Road, Bristol, Illinois (the "Property").

3. A true and correct copy of the IEPA Violation Notice Package provided by Milroy Farms to the Utica Insurers are attached as **Exhibit 1**.

4. The Milroy Claim alleges, among other things, physical damage to the field at the Property and to sections of the existing subsurface drainage tile at the Property.

5. A true and correct copy of the Milroy Claim provided to the Utica Insurers, with certain, not all, attachments thereto, is attached as **Exhibit 2**.

6. Green Organics rented the Property pursuant to written lease agreements from May 1, 1999 to July 31, 2024.

7. Green Organics occupied the Property at various times prior to the issuance of the IEPA Violation Notice Package and Milroy Claim.

8. Milroy Farms owned or was an owner of the Property at various times prior and subsequent to the issuance of the IEPA Violation Notice Package and Milroy Claim.

9. The bases for the relief requested in this Complaint for Declaratory Judgment include, among others: (a) that coverage for Green Organics and Milroy Farms regarding the IEPA Violation Notice Package is excluded by the policies' Pollution and Damage To Property exclusions; (b) that coverage for Green Organics regarding the Milroy Claim is excluded by the same exclusions; (c) that a duty to defend is not owed to Milroy Farms or Green Organics because the IEPA Violation Notice Package does not constitute a "Suit" within the meaning of the policies; and (d) that a duty to defend is not owed to Green Organics because the Milroy Claim does not constitute a "Suit".

1097150\328873041.v3

**PARTIES**

10. Plaintiff Utica Mutual Insurance Company is a New York corporation with a principal place of business located at 180 Genesse Street, New Hartford, New York 13413.

11. Plaintiff Republic-Franklin Insurance Company is an Ohio corporation with a principal place of business located at 180 Genesse Street, New Hartford, New York 13413.

12. Defendant Green Organics, Inc. is an Illinois corporation with its principal place of business in Illinois.

13. Defendant Milroy Farms, LLC is a limited liability company organized under the laws of the State of Illinois, with its principal place of business in Illinois.

14. Records maintained by the Illinois Secretary of State list Milroy Farms as having a principal address at a residence in Glen Ellyn, Illinois, true and correct copy attached hereto as **Exhibit 3**.

15. Jeffrey and Lilianna Milroy are listed as the Managers, with the same residential address in Glen Ellyn, Illinois, with Jeff also serving as the Registered Agent.

16. On information and belief, Jeffrey and Lilianna Milroy are husband and wife and reside at the Glen Ellyn residential address listed on the Illinois Secretary of State's website; and the Property, which is located in Bristol, Illinois, is less than 50 miles from the Milroy residence.

17. Jeffrey Milroy's LinkedIn profile further indicates that he is Illinois-based, is an engineer, and also is the "General Manager of Milroy Farms LLC a private land management partnership and investment fund focused on sustainable land use with composting, organic farming, timber carbon capture, drain-tile water nitrate removal, and restoration of high value wetlands."

18. Given that the LLC members are not publicly available through the Illinois Secretary of State's website, the identities of all members of Milroy Farms, LLC are not presently

3

known to the Utica Insurers, despite reasonable investigatory efforts. However, based on the circumstances, it is reasonable to surmise the LLC members are citizens of the State of Illinois.

19.     The Utica Insurers intend to seek leave supplement their diversity jurisdiction allegations upon receipt of Milroy Farms, LLC's disclosure statement under Rule 7.1 of the Federal Rules of Civil Procedure, which was amended in 2022 to provide that, unless the court orders otherwise, a party must "file a disclosure statement. The statement must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party."

**JURISDICTION AND VENUE**

20.     This Court has personal jurisdiction over the Defendants pursuant to Fed. R. Civ. P. 4(k)(1); and 735 ILCS 5/2-209(a); 5/2-209(b); and/or 5/2-209(c).

21.     The Utica Insurers seek to invoke this Court's subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) based on diversity of citizenship between the Plaintiffs, the Utica Insurers, and the Defendants, Milroy Farms and Green Organics, and on the basis that the amount in controversy exceeds $75,000, exclusive of interest and costs, based on the allegations and relief at issue in the IEPA Violation Notice Package and the Milroy Claim, which have been tendered to the Utica Insurers for payment of defense costs and indemnity under several insurance policies.

22.     This Court has subject matter jurisdiction over the several declaratory judgment counts of this complaint pursuant to 28 U.S.C. § 2201(a).  On information and belief, an actual, immediate, and justiciable controversy exists between the parties with respect to the liability insurance policies, such that a declaratory judgment will affect the rights and interests of the parties.

23.     Venue is proper in this district (a) pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim took place in Kendall and/or

1097150\328873041.v3

DuPage County, Illinois, which are located in this district; and/or (b) pursuant to 28 U.S.C. § 1391(b)(1) & (3) because one or more of the Defendants reside in or is subject to personal jurisdiction in this district.

## THE IEPA VIOLATION

24. On May 30, 2025, the IEPA issued an IEPA Violation Notice Package (**Exhibit 1**) to Milroy Farms regarding a composting facility at the Property.

25. The IEPA Violation Notice Package references Permit No. 1993-305-DE/OP, with an expiration date of November 30, 2025 (the "Permit").

26. The IEPA Violation Notice Package identifies Milroy Farms as one of the property owners of the permitted compositing area.

27. The IEPA Violation Notice Package alleges that "[i]t is apparent that Green Organics, Inc., the owner of the permit, and Midwest Materials Management, LLC, have abandoned the permitted composting facility and failed to close the facility in accordance with Title 35 Illinois Administrative Code Part 830 and Permit No. 1993-305-DE/OP."

28. The IEPA Violation Notice Package alleges "open dumping of unscreened compost material, leachate, landscape waste, and other miscellaneous wastes at the subject property," in violation of Illinois law, applicable Board regulations, and the Permit.

29. The IEPA Violation Notice Package alleges a failure to properly initiate and complete "the closure process for a permitted landscape waste compost facility," in violation of Illinois law, applicable Board regulations, and the Permit.

30. The IEPA Violation Notice Package alleges that the IEPA received a July 12, 2024 correspondence from Green Organics President, Joseph Mazza, stating that Green Organics' lease with Milroy Farms was due to expire on July 20, 2024, and that Green Organics should be "considered out of the composting business."

1097150\328873041.v3

31. The IEPA Violation Notice Package includes "Suggested Resolutions", and provides in part that: (a) "the Respondent shall cease all open dumping at the subject property. Do not dispose of any waste by burial"; (b) "the Respondent shall initiate closure of the permitted Green Organics composting facility in accordance with 35 Ill. Adm. Code 830 and the Permit"; (c) "remove all open dumped waste, to an appropriately permitted landfill or transfer station"; and (d) "Within 45 calendar days upon receipt of the VN, the Respondent shall submit copies of records reflecting remedial actions undertaken to address the above-referenced violations…".

32. The Utica Insurers received first notice of the IEPA Violation Notice Package by email on January 2, 2026.

33. By letters dated March 2, 2026, the Utica Insurers denied third-party liability coverage to Milroy Farms and Green Organics for the IEPA Violation Notice Package.

## THE MILROY CLAIM

34. On December 5, 2025, Managing Member of Milroy Farms, Jeffrey Milroy, sent an email to Bill Wojcik of Acrisure LLC (**Exhibit 2**), asserting claims against Green Organics relating to the IEPA Violation Notice Package and alleged property damage at the Property.

35. The Milroy Claim states that it "concerns property damage and environmental impairment at 1270 East Beecher Road, a composting facility formerly operated by Green Organics, Inc. and Midwest Materials."

36. The Milroy Claim states that Green Organics, Inc. and Midwest Materials "have effectively abandoned the facility and have declined to remove compost materials, citing lack of access. I have repeatedly offered access and invited both parties to attend the IEPA reinspection."

37. The Milroy Claim also asserts claims for physical damage to the field at the Property and to sections of the existing subsurface drainage tile at the Property.

1097150\328873041.v3

38.     The Utica Insurers received first notice of the Milroy Claim by email on January 2, 2026.

39.     By letter dated March 2, 2026, the Utica Insurers denied third-party liability coverage to Green Organics for the Milroy Claim.

## THE INSURANCE POLICIES

40.     Utica Mutual Insurance Company issued the following commercial package policies to Green Organics, Inc. as the first Named Insured (collectively, the "Package Policies"):

a.      Policy no. CPP 5517717 for the policy period of June 6, 2022 to June 6, 2023 (the "2022-23 Commercial Package Policy").

b.      Policy no. CPP 5517717 for the policy period of June 6, 2023 to June 6, 2024 (the "2023-24 Commercial Package Policy").

c.      Policy no. CPP 5517717, originally for the policy period of June 6, 2024 to June 6, 2025, which was cancelled effective August 1, 2024 (the "2024 Commercial Package Policy").

41.     A true and correct copy of the 2022-23 Package Policy, with premiums redacted and bates stamps applied, is attached as **Exhibit 4**.

42.     A true and correct copy of the 2023-24 Package Policy, with premiums redacted and bates stamps applied, is attached as **Exhibit 5**.

43.     A true and correct copy of the 2024 Package Policy, with premiums redacted and bates stamps applied, is attached as **Exhibit 6**.

44.     Each of the Commercial Package Policies includes a Commercial General Liability Coverage Part (the "CGL Part").

7

45. Utica Mutual Insurance Company issued the following commercial liability umbrella policies to Green Organics, Inc. as the first Named Insured (collectively, the "Umbrella Policies"):

a. Policy no. CULP 5526182 for the policy period of June 6, 2022 to June 6, 2023 (the "2022-23 Umbrella Policy").

b. Policy no. CULP 5526182 for the policy period of June 6, 2023 to June 6, 2024 (the "2023-24 Umbrella Policy").

c. Policy no. CULP 5526182, originally for the policy period of June 6, 2024 to June 6, 2025, which was cancelled effective June 6, 2024 (the "2024 Umbrella Policy").

46. A true and correct copy of the 2022-23 Umbrella Policy, with premiums redacted and bates stamps applied, is attached as **Exhibit 7**.

47. A true and correct copy of the 2023-24 Umbrella Policy, with premiums redacted and bates stamps applied, is attached as **Exhibit 8**.

48. A true and correct copy of the 2024 Umbrella Policy, with premiums redacted and bates stamps applied, is attached as **Exhibit 9**.

49. To the extent that the actual policy language differs from any quote, excerpt, paraphrase, or reference in this pleading, it is the actual policy language that controls, and this pleading does not modify or waive any policy language.

50. The Utica Insurers reserve all rights and defenses under the aforementioned policies, the law and in equity, including without limitation, all policy terms, conditions and exclusions, and those matters addressed in their letters of March 2, 2026.

<u>**COUNT I**</u>

**Declaratory Judgment Against Milroy Farms and Green Organics:**
<u>**No Duty to Defend Because the IEPA Violation Notice Package is Not a "Suit"**</u>

51. The Utica Insurers incorporate by reference paragraphs 1 through 50 above, as though fully restated herein.

52. Each CGL Part of the Package Policies includes the following wording, subject to the policy's other wording:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages….

\*        \*        \*

**SECTION V – DEFINITIONS**

**18.**   "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.**   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.**   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

53. Each Umbrella Policy includes the following wording, subject to the policy's other wording:

**SECTION I - COVERAGES**

9

1097150\328873041.v3

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

   **a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted….

*     *     *

**SECTION V - DEFINITIONS**

**21.**     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.**     An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.**     Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

54.     The IEPA Violation Notice Package, attached as **Exhibit 1**, is not a "suit" as defined in the CGL Part of the Package Policies or in the Umbrella Policies.

55.     Accordingly, the Utica Insurers have no duty to defend or to pay defense costs on behalf of Milroy Farms or Green Organics with respect to the IEPA Violation Notice Package.

**COUNT II**

**Declaratory Judgment Against Green Organics:
No Duty to Defend Because the Milroy Claim is Not a "Suit"**

56.     The Utica Insurers incorporate by reference paragraphs 1 through 50 above, as though fully restated herein.

10

57.     The Utica Insurers incorporate by reference paragraphs 52 through 53 from Count I, regarding the "suit" requirement, as though full restated herein.

58.     The Milroy Claim, attached as **Exhibit 2**, is not a "suit" as defined in the CGL Part of the Package Policies or in the Umbrella Policies.

59.     Accordingly, the Utica Insurers have no duty to defend or to pay defense costs on behalf of Green Organics with respect to the Milroy Claim.

## COUNT III

**Declaratory Judgment Against Green Organics and Milroy Farms:**
**No Coverage for IEPA Violation Due to the Pollution Exclusions and Other Provisions**

60.     The Utica Insurers incorporate by reference paragraphs 1 through 50 above, as though fully restated herein.

61.     The Package Policies[1] each include the following wording, subject to their other wording, which provides in part:

**SUPPLEMENTAL DECLARATIONS**

Named Insured: GREEN ORGANICS INC

Location of all premises you own, rent or occupy :

Location #1, 1270 E. BEECHER ROAD … BRISTOL, IL 60512

62.     Coverage A of the CGL Part of each Package Policy is subject to the following Pollution exclusion and definition, which provide in part:

**2.     Exclusions**

This insurance does not apply to:

**f.     Pollution**

---

[1] For the 2022-23 Package Policy, the address is amended by endorsement.

1097150\328873041.v3

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:…

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to: * * *

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or

12

1097150\328873041.v3

neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

\* \* \*

### SECTION V – DEFINITIONS

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

63. Coverage A of each Umbrella Policy is subject to the following Pollution exclusion and definitions, which provide in part:[2]

**2. Exclusions**

This Insurance does not apply to:

**i. Pollution**

**(1)** "Bodily Injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed

---

[2] The Pollution exclusions in the Umbrella Policies are subject to a "Hostile Fire Exception", by endorsement.

13

1097150\328873041.v3

but for the exhaustion of underlying limits for "bodily injury" and "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the pollution risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying Insurance", unless otherwise directed by this insurance.

*    *    *

**SECTION V - DEFINITIONS**

15. "Pollutants" mean any solid, liquid, gaseous or thermal Irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste Includes materials to be recycled, reconditioned or reclaimed.

16. "Pollution cost or expense" means any loss, cost or expense arising out of any:

    **a.** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or In any way respond to, or assess the effects of, "pollutants"; or

    **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or In any way responding to, or assessing the effects of, "pollutants".

*    *    *

64. Coverage A of the CGL Part of each Package Policy is subject to the following Damage to Property exclusion, amended by endorsement, which provides in part:

    **j.** **Damage To Property**

    "Property damage" to:

    **(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

14

1097150\328873041.v3

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

\* \* \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard"

\* \* \*

65. Coverage A of each Umbrella Policy is subject to the following Damage to Property exclusion, which provides in part:

**m.** **Damage To Property**

"Property damage" to:

**(1)** Property:

    **(a)** You own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

\* \* \*

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

15

1097150\328873041.v3

\* \* \*

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply If the premises are "your work" and were never occupied, rented or held for rental by you.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

\* \* \*

66.     Additionally, subject to their other wording, Coverage A of the CGL Part of the Package Policies and Coverage A of the Umbrella Policies apply only to "property damage" caused by an "occurrence," as defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions".

67.     Based on the statements in the IEPA Violation Notice Package, attached as **Exhibit 1**, the Pollution exclusions for the CGL Part of the Package Policies and Coverage A of the Umbrella Policies apply thereto.

68.     Based on the statements in the IEPA Violation Notice Package, the Damage To Property exclusions for the CGL Part of the Package Policies and Coverage A of the Umbrella Policies apply thereto.

69.     Additionally, to the extent that the "property damage" at issue in the IEPA Violation Notice Package was not caused by an "occurrence," it falls outside the scope of coverage of the Package Policies and Umbrella Policies.

16

1097150\328873041.v3

70.    Based on the policy provisions addressed in this Count, there is no potential for coverage for Milroy Farms under the Package Policies or Umbrella Policies, and no duty to defend, pay defense costs, or indemnify.

71.    Based on the policy provisions addressed in this Count, there is no potential for coverage for Green Organics under the Package Policies or Umbrella Policies, and no duty to defend, pay defense costs, or indemnify.

## COUNT IV

**Declaratory Judgment Against Green Organics:
No Coverage for Milroy Claim Due Damage To Property and Other Provisions**

72.    The Utica Insurers incorporate by reference paragraphs 1 through 50 above, as though fully restated herein.

73.    The Utica Insurers incorporate by reference paragraphs 61 through 66 from Count III, regarding various policy provisions, as though full restated herein.

74.    Based on the statements in the December 5, 2025 email setting forth the Milroy Claim, attached as **Exhibit 2**, the Damage To Property exclusions for the CGL Part of the Package Policies and Coverage A of the Umbrella Policies apply thereto.

75.    Based on the statements in the December 5, 2025 email which comprises the Milroy Claim, the Pollution exclusions for the CGL Part of the Package Policies and Coverage A of the Umbrella Policies apply thereto.

76.    Additionally, to the extent that the "property damage" at issue in the Milroy Claim was not caused by an "occurrence," it falls outside the scope of coverage of the Package Policies and Umbrella Policies.

1097150\328873041.v3

77. Based on the policy provisions addressed in this Count, there is no potential for coverage for Green Organics under the Package Policies or Umbrella Policies, and no duty to defend, pay defense costs, or indemnify.

## COUNT V

### Declaratory Judgment Against Green Organics and Milroy Farms: No Coverage for IEPA Violation Due to Temporal and Other Defenses

78. The Utica Insurers incorporate by reference paragraphs 1 through 50 above, as though fully restated herein.

79. The IEPA Violation Notice Package falls outside of coverage to the extent "property damage" did not occur during the policy period of a given policy, as required for the insuring agreements for Coverage A of the CGL Part of the Package Policies and the Umbrella Policies.

80. The IEPA Violation Notice Package falls outside of coverage to the extent "property damage" was known to have occurred in whole or in part or is deemed to have been known prior to the policy period of a given policy, as set forth in Sec. I.b.(3) and d., as endorsed, of the CGL Part of the Package Policies, and/or in Sec. I.1.c.(3) and e., as endorsed, of the Umbrella Policies.

81. The IEPA Violation Notice Package is uninsurable as a matter of law and/or public policy under the "known loss" or "loss in progress" doctrine, to the extent that, prior to the issuance of a given insurance policy, Milroy Farms or Green Organics knew or had reason to know that there was a substantial probability that it would incur or had already incurred liability.

82. Based on the matters addressed in this Count, the Utica Insurers seek declaratory judgment to the extent there is no potential for coverage for Milroy Farms or Green Organics under the Package Policies or Umbrella Policies, and no duty to defend, pay defense costs, or indemnify.

18

## COUNT VI

### Declaratory Judgment Against Green Organics:
### No Coverage for Milroy Claim Due to Temporal and Other Defenses

83.     The Utica Insurers incorporate by reference paragraphs 1 through 50 above, as though fully restated herein.

84.     The Milroy Claim falls outside of coverage to the extent "property damage" did not occur during the policy period of a given policy, as required for the insuring agreements for Coverage A of the CGL Part of the Package Policies and the Umbrella Policies.

85.     The Milroy Claim falls outside of coverage to the extent "property damage" was known to have occurred in whole or in part or is deemed to have been known prior to the policy period of a given policy, as set forth in Sec. I.b.(3) and d., as endorsed, of the CGL Part of the Package Policies, and/or in Sec. I.1.c.(3) and e., as endorsed, of the Umbrella Policies.

86.     To the extent that, prior to the issuance of a given insurance policy, Green Organics knew or had reason to know that there was a substantial probability that it would incur or had already incurred liability, the Milroy Claim is uninsurable as a matter of law and/or public policy under the "known loss" or "loss in progress" doctrine.

87.     Based on the matters addressed in this Count, the Utica Insurers seek declaratory judgment to the extent there is no potential for coverage for Green Organics under the Package Policies or Umbrella Policies, and no duty to defend, pay defense costs, or indemnify.

## COUNT VII

### Declaratory Judgment Against Green Organics and Milroy Farms:
### No Coverage for IEPA Violation Due to Other Exclusions and Defenses

88.     The Utica Insurers incorporate by reference paragraphs 1 through 50 above, as though fully restated herein.

1097150\328873041.v3

89. Coverage A of the CGL Part of the Package Policies is subject to Exclusion a. (Expected Or Intended Injury), as amended by endorsement, and Coverage A of the Umbrella Policies is subject to Exclusion a. (Expected Or Intended Injury), as amended by endorsement, as well.

90. Coverage is excluded for the IEPA Violation Notice Package to the extent that Exclusion a. (Expected Or Intended Injury) of Coverage A of the CGL Part of the Package Policies and the Umbrella Policies apply.

91. Coverage A of the CGL Part of the Package Policies is subject to Exclusion b. (Contractual Liability) and Coverage A of the Umbrella Policies is subject to Exclusion b. (Contractual Liability) as well.

92. Coverage is excluded for the IEPA Violation Notice Package to the extent that Exclusion b. (Contractual Liability) of Coverage A of the CGL Part of the Package Policies and the Umbrella Policies apply.

93. Coverage A of the CGL Part of the Package Policies is subject to Exclusion k. (Damage to Your Product) and Coverage A of the Umbrella Policies is subject to Exclusion n. (Damage to Your Product) as well.

94. Coverage is excluded for the IEPA Violation Notice Package to the extent that Exclusion k. (Damage to Your Product) of Coverage A of the CGL Part of the Package Policies and Exclusion n. of Coverage A of the Umbrella Policies apply.

95. Coverage A of the CGL Part of the Package Policies is subject to Exclusion l. (Damage to Your Work) and Coverage A of the Umbrella Policies is subject to Exclusion o. (Damage to Your Work) as well.

20

96.     Coverage is excluded for the IEPA Violation Notice Package to the extent that Exclusion l. (Damage to Your Work) of Coverage A of the CGL Part of the Package Policies and Exclusion o. of Coverage A of the Umbrella Policies apply.

97.     Coverage A of the CGL Part of the Package Policies is subject to Exclusion m. (Damage To Impaired Property Or Property Not Physically Injured) and Coverage A of the Umbrella Policies is subject to Exclusion p. (Damage To Impaired Property Or Property Not Physically Injured) as well.

98.     Coverage is excluded for the IEPA Violation Notice Package to the extent that Exclusion m. (Damage To Impaired Property Or Property Not Physically Injured) of Coverage A of the CGL Part of the Package Policies and Exclusion p. of Coverage A of the Umbrella Policies apply.

99.     Coverage A of the CGL Part of the Package Policies is subject to a Limitation of Coverage To Designated Premises, Project Or Operation endorsement, and the Umbrella Policies also are subject to endorsements for Limitation Of Coverage To Designated Premises Or Project and Illinois – Limitation of Coverage To Designated Premises, Project Or Operation.

100.    To the extent that "property damage" falls outside the limitations of the foregoing Limitation of Coverage endorsements, the IEPA Violation Notice Package falls outside coverage of the Package Policies and Umbrella Policies.

101.    To the extent that any fines, penalties, relief, matter, or amount awarded under the IEPA Violation Notice Package do not qualify as "damages" because of … 'property damage'", as required for the insuring agreements for Coverage A of the CGL Part of the Package Policies and Coverage A of the Umbrella Policies, or do not fall within the Supplementary Payments provisions of the policies, coverage is not available for such.

21

102. To the extent that the conduct or damages at issue in the IEPA Violation Notice Package are non-fortuitous or uninsurable as a matter of law and/or public policy, coverage is not available under the Package Policies or Umbrella Policies.

103. To the extent that any of the policy conditions are not fully fulfilled or are breached, including, without limitation, Commercial General Liability Condition 2. (Duties In The Event Of Occurrence, Offense, Claim Or Suit) of the CGL Part of the Package Policies, as endorsed, or Condition 3. (Duties In The Event Of Occurrence, Offense, Claim Or Suit) of the Umbrella Policies, coverage is not available under such policy(ies).

104. To the extent that other insurance is available for the IEPA Violation Notice Package to which any of the Package Policies or Umbrella Policies is excess, coverage is not available under such policy(ies).

105. Based on the matters addressed in this Count, the Utica Insurers seek declaratory judgment to the extent there is no potential for coverage for Milroy Farms or Green Organics under the Package Policies or Umbrella Policies, and no duty to defend, pay defense costs, or indemnify.

## COUNT VIII

### Declaratory Judgment Against Green Organics:
### No Coverage for Milroy Claim Due to Other Exclusions and Defenses

106. The Utica Insurers incorporate by reference paragraphs 1 through 50 above, as though fully restated herein.

107. Coverage A of the CGL Part of the Package Policies is subject to Exclusion a. (Expected Or Intended Injury), as amended by endorsement, and Coverage A of the Umbrella Policies is subject to Exclusion a. (Expected Or Intended Injury), as amended by endorsement, as well.

22

108. Coverage is excluded for the Milroy Claim to the extent that Exclusion a. (Expected Or Intended Injury) of Coverage A of the CGL Part of the Package Policies and the Umbrella Policies apply.

109. Coverage A of the CGL Part of the Package Policies is subject to Exclusion b. (Contractual Liability) and Coverage A of the Umbrella Policies is subject to Exclusion b. (Contractual Liability) as well.

110. Coverage is excluded for the Milroy Claim to the extent that Exclusion b. (Contractual Liability) of Coverage A of the CGL Part of the Package Policies and the Umbrella Policies apply.

111. Coverage A of the CGL Part of the Package Policies is subject to Exclusion k. (Damage to Your Product) and Coverage A of the Umbrella Policies is subject to Exclusion n. (Damage to Your Product) as well.

112. Coverage is excluded for the Milroy Claim to the extent that Exclusion k. (Damage to Your Product) of Coverage A of the CGL Part of the Package Policies and Exclusion n. of Coverage A of the Umbrella Policies apply.

113. Coverage A of the CGL Part of the Package Policies is subject to Exclusion l. (Damage to Your Work) and Coverage A of the Umbrella Policies is subject to Exclusion o. (Damage to Your Work) as well.

114. Coverage is excluded for the Milroy Claim to the extent that Exclusion l. (Damage to Your Work) of Coverage A of the CGL Part of the Package Policies and Exclusion o. of Coverage A of the Umbrella Policies apply.

115. Coverage A of the CGL Part of the Package Policies is subject to Exclusion m. (Damage To Impaired Property Or Property Not Physically Injured) and Coverage A of the

1097150\328873041.v3

Umbrella Policies is subject to Exclusion p. (Damage To Impaired Property Or Property Not Physically Injured) as well.

116. Coverage is excluded for the Milroy Claim to the extent that Exclusion m. (Damage To Impaired Property Or Property Not Physically Injured) of Coverage A of the CGL Part of the Package Policies and Exclusion p. of Coverage A of the Umbrella Policies apply.

117. Coverage A of the CGL Part of the Package Policies is subject to a Limitation of Coverage To Designated Premises, Project Or Operation endorsement, and the Umbrella Policies also are subject to endorsements for Limitation Of Coverage To Designated Premises Or Project and Illinois – Limitation of Coverage To Designated Premises, Project Or Operation.

118. To the extent that "property damage" falls outside the limitations of the foregoing Limitation of Coverage endorsements, the Milroy Claim falls outside coverage of the Package Policies and Umbrella Policies.

119. To the extent that any fines, penalties, relief, matter, or amount awarded under the Milroy Claim do not qualify as "damages" because of … 'property damage'", as required for the insuring agreements for Coverage A of the CGL Part of the Package Policies and Coverage A of the Umbrella Policies, or do not fall within the Supplementary Payments provisions of the policies, coverage is not available for such.

120. To the extent that the conduct or damages at issue in the Milroy Claim are non-fortuitous or uninsurable as a matter of law and/or public policy, coverage is not available under the Package Policies or Umbrella Policies.

121. To the extent that any of the policy conditions are not fully fulfilled or are breached, including, without limitation, Commercial General Liability Condition 2. (Duties In The Event Of Occurrence, Offense, Claim Or Suit) of the CGL Part of the Package Policies, as endorsed, or

Condition 3. (Duties In The Event Of Occurrence, Offense, Claim Or Suit) of the Umbrella Policies, coverage is not available under such policy(ies).

122. To the extent that other insurance is available for the Milroy Claim to which any of the Package Policies or Umbrella Policies is excess, coverage is not available under such policy(ies).

123. Based on the matters addressed in this Count, the Utica Insurers seek declaratory judgment to the extent there is no potential for coverage for Green Organics under the Package Policies or Umbrella Policies, and no duty to defend, pay defense costs, or indemnify.

## COUNT IX

**Republic-Franklin Declaratory Judgment Against Milroy Farms and Green Organics:**
**No Coverage for IEPA Violation Under Cancelled 2024 Umbrella Policy**

124. Republic-Franklin Insurance Company ("Republic-Franklin") incorporates by reference paragraphs 1 through 50 above, as though fully restated herein.

125. The 2024 Umbrella Policy originally was issued for the policy period of June 6, 2024 to June 6, 2025.

126. The 2024 Umbrella Policy was cancelled effective June 6, 2024, by endorsement.

127. Based on the matters addressed in this Count, Republic-Franklin seeks a declaratory judgment that there is no potential for coverage for Milroy Farms or Green Organics for the IEPA Violation Notice Package under the 2024 Umbrella Policy, and no duty to defend, pay defense costs, or indemnify.

## COUNT X

**Republic-Franklin Declaratory Judgment Against Green Organics:**
**No Coverage for Milroy Claim Under Cancelled 2024 Umbrella Policy**

128. Republic-Franklin Insurance Company ("Republic-Franklin") incorporates by reference paragraphs 1 through 50 above, as though fully restated herein.

25

129. The 2024 Umbrella Policy originally was issued for the policy period of June 6, 2024 to June 6, 2025.

130. The 2024 Umbrella Policy was cancelled effective June 6, 2024, by endorsement.

131. Based on the matters addressed in this Count, Republic-Franklin seeks a declaratory judgment that there is no potential for coverage for Green Organics for the Milroy Claim under the 2024 Umbrella Policy, and no duty to defend, pay defense costs, or indemnify.

## COUNT XI

### Declaratory Judgment Against Milroy Farms:
### No Coverage for IEPA Violation in Absence of Insured Status

132. The Utica Insurers incorporate by reference paragraphs 1 through 50 above, as though fully restated herein.

133. Coverage A of the CGL Part of the Package Policies and Coverage A of the Umbrella Policies apply only to sums "the insured becomes legally obligated to pay as damages", subject to the policies' other wording.

134. To the extent that Milroy Farms does not qualify as an insured or additional insured under any given Package Policy or Umbrella Policy, then coverage is unavailable under such policy(ies) for the IEPA Violation Notice Package.

135. Based on the matters addressed in this Count, the Utica Insurers seek declaratory judgment to the extent there is no potential for coverage for Milroy Farms under any given Package Policy or Umbrella Policy, and no duty to defend, pay defense costs, or indemnify.

**WHEREFORE**, Plaintiffs, Utica Mutual Insurance Company and Republic-Franklin Insurance Company, request judgment in their favor and against Green Organics, Inc. and Milroy Farms, LLC on this Complaint for Declaratory Judgment as follows:

26

1097150\328873041.v3

(1)  On Count I, that this Court declare that the Utica Insurers owe no duty to defend Milroy Farms or Green Organics for the IEPA Violation Notice Package under the Package Policies and Umbrella Policies because the IEPA Violation is not a "suit".

(2)  On Count II, that this Court declare that the Utica Insurers owe no duty to defend Green Organics for the Milroy Claim under the Package Policies and Umbrella Policies because the Milroy Claim is not a "suit".

(3)  On Count III, that this Court declare that the Utica Insurers owe no duty to defend or to provide indemnity for Milroy Farms or Green Organics for the IEPA Violation Notice Package under the Package Policies and Umbrella Policies.

(4)  On Count IV, that this Court declare that the Utica Insurers owe no duty to defend or to provide indemnity for Green Organics for the Milroy Claim under the Package Policies and Umbrella Policies.

(5)  On Count V, that this Court declare that the Utica Insurers owe no duty to defend or to provide indemnity for Milroy Farms or Green Organics for the IEPA Violation Notice Package under the Package Policies and Umbrella Policies.

(6)  On Count VI, that this Court declare that the Utica Insurers owe no duty to defend or to provide indemnity for Green Organics for the Milroy Claim under the Package Policies and Umbrella Policies.

(7)  On Count VII, that this Court declare that the Utica Insurers owe no duty to defend or to provide indemnity for Milroy Farms or Green Organics for the IEPA Violation Notice Package under the Package Policies and Umbrella Policies.

1097150\328873041.v3

(8)     On Count VIII, that this Court declare that the Utica Insurers owe no duty to defend or to provide indemnity for Green Organics for the Milroy Claim under the Package Policies and Umbrella Policies.

(9)     On Count IX, that this Court declare that Republic-Franklin Insurance Company owes no duty to defend or to provide indemnity for Milroy Farms or Green Organics under the 2024 Umbrella Policy for the IEPA Violation Notice Package.

(10)   On Count X, that this Court declare that Republic-Franklin Insurance Company owes no duty to defend or to provide indemnity for Green Organics under the 2024 Umbrella Policy for the Milroy Claim.

(11)   On Count XI, that this Court declare that the Utica Insurers owe no duty to defend, pay defense costs, or indemnify Milroy Farms for the IEPA Violation Notice Package under any Package Policies and Umbrella Policies for which it is not an insured or additional insured.

(12)   That this Court award the Utica Insurers such other and further relief as is just and proper.

Dated: April 27, 2026                                          HINSHAW & CULBERTSON LLP

                                                                          By:      /s/ Paris B. Glazer
                                                                                   Counsel for Plaintiffs,
Paris B. Glazer (#6309089)                                   Utica Mutual Insurance Company and
Jordan Evans (#6338943)                                      Republic-Franklin Insurance Company
HINSHAW & CULBERTSON LLP
151 North Franklin St., Suite 2500
Chicago, Illinois 60606
Tel: (312) 704-3215 (Glazer)
Tel: (312) 704-3494 (Evans)
PGlazer@hinshawlaw.com
jevans@hinshawlaw.com

28

1097150\328873041.v3